1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANE THOMAS-YOUNG,<br><br>Plaintiff,<br><br>v.<br><br>SUTTER CENTRAL VALLEY HOSPITALS dba MEMORIAL MEDICAL CENTER,<br><br>Defendant. | Case No.  1:12-cv-01410-AWI-SKO<br><br>**ORDER REQUIRING SUPPLEMENTAL BRIEFING RE: INFORMAL DISCOVERY DISPUTE CONFERENCE**<br><br>(Docket Nos. 17-19) |

## I.   INTRODUCTION

On December 4, 2012, the Court issued a Scheduling Order setting a mid-discovery status conference for June 12, 2013.  (Doc. 11.)  On June 5 and 7, 2013, Plaintiff Diane Thomas-Young ("Plaintiff") and Defendant Sutter Central Valley Hospitals DBA Memorial Medical Center ("Defendant") filed status reports for the mid-discovery status conference, which indicated that there were various discovery disputes between the parties.  (Docs. 17-19.)   The Court thus vacated the mid-discovery status conference and set an informal discovery dispute conference for June 26, 2013, at 4:00 p.m.

In preparation of the discovery dispute conference, the Court ORDERS the parties to continue to meet and confer and provides the following guidance regarding the various issues in dispute.  The Court further ORDERS the parties to submit additional briefing by no later than

1

1    **12:00 p.m. (noon) on Friday, June 21, 2013**, regarding the outcome of their meet and confer

2    efforts and to set forth the current status of any remaining disputes.

## II.    DISCUSSION

4         The parties' status reports outlined various discovery disputes between the parties

5    consisting of issues related to the completion of Plaintiff's deposition, scheduling of depositions

6    of other witnesses, Plaintiff's responses to Defendant's first set of special interrogatories,

7    Plaintiff's objections to Defendant's second request for production of documents, and discovery

8    related to Plaintiff's emotional distress damages.  (Docs. 17-19.)

9         The Court's informal discovery dispute resolution process requires the parties to meet and

10   confer, either in person or via telephone, in a good faith effort to resolve the disputes and to limit

11   the issues to only those matters where the parties have a true dispute.  Here, the parties have

12   indicated that they have had numerous conference calls and written correspondence regarding

13   their discovery disputes but have been unable to resolve all the issues.  The parties are to continue

14   to meet and confer prior to the informal discovery dispute conference in an effort to resolve the

15   remaining issues and/or limit the scope of issues that remain unresolved.

16        Additionally, the parties shall each submit to the Court and serve to each other a brief

17   summary (no more than five (5) pages) that informs the Court as to the outcome of the additional

18   meet and confer efforts and discusses the remaining disputed discovery issues and the current

19   nature of the disputes.   The parties shall email the summaries to the Court at

20   skoorders@caed.uscourts.gov by no later than 12:00 p.m. (noon) on Friday, June 21, 2013.

21        To assist the parties in their meet and confer effort, the Court offers the below guidance

22   regarding the disputed discovery issues.

23   **A.    Plaintiff's Deposition**

24        The parties agreed that Plaintiff's deposition would take place over two days, and Plaintiff

25   appeared for her initial deposition on May 20, 2013.  There appears to be a dispute as to when the

26   second day of Plaintiff's deposition will take place, although the parties seem to have agreed that

27   the deposition would be held on either June 28 or July 8, 2013.  (Doc. 18, 4:7; Doc. 19, 3:11-12.)

28   As such, the parties are encouraged to confirm a date to conduct Plaintiff's deposition.

1        Rule 30(d)(1) of the Federal Rules of Civil Procedure provides that, unless otherwise

2   stipulated or ordered by the court, a deposition is limited to one day of seven hours.  Defendant

3   indicates that it may require additional time to conduct Plaintiff's deposition, and states that an

4   additional session may be required.  (Doc. 18, 4:15-19.)  Plaintiff contends that she had only

5   agreed to a total of seven hours over two days, but not to any extension of time beyond seven

6   hours. (Doc. 19, 2:4-6.)

7        Defendant must show "good cause" to justify such a court order seeking to extend the

8   deposition beyond seven hours. *See Pratt v. Archstone Willow Glen Apartments*, No. C08-3588

9   JF (RS), 2009 WL 2032469, at *1 (N.D. Cal. July 10, 2009) (citing *Boston Scientific v. Cordis*

10  *Corp.*, No. 5:02–CV–1474 JW (RS), 2004 WL 1945643, at *2 (N.D. Cal. Sept. 1, 2004)).

11  "Considerations relevant to granting an extension include events occurring over a long period of

12  time, the need fully to explore the theories upon which the witness relies, or, in multi-party cases,

13  the need for each party to examine the witness with the understanding that duplicative

14  questioning is to be avoided." *Pratt,* 2009 WL 2032469, at *1 (citing *Saunders v. Knight*, No. CV

15  F 04-5924 AWI LJO, 2007 WL 38000, at *3 (E.D. Cal. Jan 4, 2007)); *see also Tatum v.*

16  *Schwartz*, No. CIVS061440RRBEFB, 2008 WL 298824, at *2, n. 1 (E.D. Cal. Feb. 1, 2008)

17  (noting that the Rule 30 Advisory Committee's notes require good cause to justify a court order

18  extensively expanding the seven hour time limit and that the court should consider situations such

19  as when the witness needs an interpreter, when the examination will cover events occurring over

20  a long period of time, or when the witness will be questioned about numerous or lengthy

21  documents).

22       Here, the parties have not indicated how many hours Plaintiff was deposed on her first day

23  of examination, or how many hours Defendant has remaining of the seven hour limit to question

24  Plaintiff during the second day.  Defendant is advised to use its remaining deposition time wisely,

25  as the reasons Defendant provided to request additional time do not appear to merit an extension

26  based upon the Rule 30 Advisory Committee's notes. *See* Fed. R. Civ. P. 30 Advisory Committee

27  Notes, 2000 Amendment.  If Defendant believes that it still requires more time after concluding

28  the full seven hours of Plaintiff's deposition, Defendant must show "good cause" as to why the

3

1    deposition could not be completed.  Defendant should further establish particularized categories

2    of information it is seeking, explain why the deposition could not be concluded within the seven-

3    hour time allowed, and indicate exactly how long will be needed to finish the deposition.  The

4    parties are advised that the Court may not approve the request for additional time and, as such,

5    Defendant should attempt to conclude Plaintiff's deposition within the time remaining.

6    **B.      Other Depositions**

7         Defendant contends that Plaintiff has been unwilling to schedule depositions of other

8    witnesses until Plaintiff's deposition is concluded.  As the parties appear to have now agreed upon

9    potential dates to conduct the second day of Plaintiff's deposition, they are encouraged to also

10   schedule depositions of other witnesses.

11   **C.      Plaintiff's Responses to Defendant's Special Interrogatories, Set One**

12        As a general matter, the parties were informed at the December 4, 2012, scheduling

13   conference with Judge Oberto that boilerplate objections are not looked upon favorably and will

14   not be upheld.  As such, to the extent that Plaintiff has responded with boilerplate objections,

15   supplemental responses are required.  Additionally, Plaintiff stated that she agreed to modify one

16   of the answers to clarify that there was one employment contract entered containing various terms

17   and conditions.  (Doc. 19, 3:15-17.)  If Plaintiff has not yet provided that supplemental answer,

18   she should do so as soon as possible.  It is unclear what additional information Defendant is

19   seeking, since its main contention seems to be that "Plaintiff's responses suggest that there were

20   multiple alleged verbal agreements, (and at least one alleged written agreement) but the response

21   is ambiguous and evasive."  (Doc. 18, 6:2-4.)  If Plaintiff's supplemental response clarifying the

22   issue regarding the number of contracts does not sufficiently resolve this discovery dispute,

23   Defendant must identify what other information is required, and the parties shall meet and confer

24   in an attempt to limit the scope of the remaining disputes.

25   **D.      Plaintiff's Objections to Defendant's Second Request for Production of Documents**

26        The Court notes that Defendant's second request for production of documents was

27   propounded on May 22, 2013, and responses are not yet due.  (*See* Doc. 19-3.)  However, the

28   parties are encouraged to meet and confer to proactively resolve any disputed issues and to insure

4

1    that the scope of the request is limited to relevant time frames and issues.  For example,

2    Defendant's Request Nos. 25-27 seek emails concerning Plaintiff's consulting work from 2008

3    through 2010; Plaintiff, however, was employed with Defendant from September 2008 to July

4    2010, and Defendant should thus clarify why documents are sought outside of that time period.  If

5    the parties are unable to resolve disputes that arise, Defendant should inform the Court as to how

6    the information sought is relevant and each party should address the extent to which they believe

7    the scope of the discovery sought can be narrowed.  Plaintiff, however, is cautioned that she will

8    likely be required to respond; as such, the parties are again encouraged to meet and confer and

9    come to mutually agreeable terms regarding this dispute.

10   **E.      Discovery Related to Plaintiff's Emotional Distress Damages**

11           Defendant contends that Plaintiff has refused to produce medical records supporting her

12   claim for emotional distress damages and anticipates that Plaintiff will object to deposition

13   questions exploring Plaintiff's alleged emotional distress claims.  Plaintiff contends that legal

14   precedent establishes that Defendant cannot obtain Plaintiff's medical records about her mental

15   health simply because she is claiming emotional distress.  Plaintiff asserts that she has not waived

16   any privilege as a result of claiming "garden variety" emotional distress.

17           Plaintiff relies on *Vinson v. Superior Court*, 43 Cal. 3d 833 (1987) for the contention that

18   "[a] simple sexual harassment claim asking compensation for having to endure an oppressive

19   work environment or for wages lost following an unjust dismissal would not normally create a

20   controversy regarding the plaintiff's mental state." (*See* Doc. 19, 4:27-5:4, (citing *Vinson*, 43 Cal.

21   3d. at 840).)  Plaintiff thus asserts that she has not waived the psychotherapist-patient privilege by

22   simply alleging "garden-variety emotional distress or incidental emotional distress damages."

23   (Doc. 19, 5:4-5.)  *Vinson*, however, also found that "[i]t is another matter entirely, however, when

24   a party places his own mental state in controversy by alleging mental and emotional distress . . .

25   [A] party who chooses to allege that he has mental and emotional difficulties can hardly deny his

26   mental state is in controversy." *Id*. at 839.  The court in *Vinson* ultimately compelled the plaintiff

27   to undergo a mental examination, finding that "the mental examination in this case largely grows

28   out of plaintiff's emotional distress claim."  *Id*. at 847.  The court noted, however, that "[i]n

1  general it is unlikely that a simple sexual harassment suit will justify a mental examination.  Such

2  examinations may ordinarily be considered only in cases in which the alleged mental or

3  emotional distress is said to be ongoing."  *Id*. at 847; *see also Doyle v. Superior Court*, 50 Cal.

4  App. 4th 1878, 1885-86 (1996) (discussing how *Vinson* had compelled a mental examination

5  because the plaintiff had alleged continuing mental ailments).

6            The issue of psychotherapist-patient privilege waiver is not clear-cut, and a claim of

7  emotional distress does not necessarily lead to a waiver of the psychotherapist-patient privilege.

8  The court in *E.E.O.C. v. California Psychiatric Transitions*, 258 F.R.D. 391, 399 (E.D. Cal.

9  2009) set forth the federal courts' recognition of the psychotherapist-patient privilege and the two

10 different approaches federal courts have taken in determining whether the privilege has been

11 waived:

12            In *Jaffee v. Redmond*, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), the
           United States Supreme Court formally recognized the psychotherapist-patient
13           privilege. The Court specifically held that "confidential communications between a
           licensed psychotherapist and her patients in the course of diagnosis or treatment
14           are protected from compelled disclosure." *Jaffee*, 518 U.S. at 5, 116 S.Ct. 1923.
           The Court also recognized, without any further elaboration, that this privilege may
15           be waived by the patient. *Jaffee*, 518 U.S. at 15 n. 14, 116 S.Ct. 1923.

16           Under *Jaffee*, the party seeking to invoke the benefit of the privilege bears the
           burden of showing: 1) the therapist must be licensed, 2) the communications were
17           confidential, and 3) the communications were made during the course of diagnosis
           or treatment. *United States v. Romo*, 413 F. 3d 1044, 1047 (9th Cir. 2005); *Speaker
18           v. County of San Bernardino*, 82 F. Supp. 2d 1105, (C.D. Cal. 2000) (burden of
           proof for the psychotherapist/patient privilege is on the party seeking to establish
19           that the privilege exists). Thus, Plaintiff bears the burden of invoking the privilege.

20           Even if a party meets the burden outlined above, a party may waive the privilege.
           Because the Supreme Court has not addressed the rule of waiver of the
21           psychotherapist-patient privilege when a plaintiff brings forth claims based on
           emotional distress, two different approaches to the waiver have emerged since
22           *Jaffee*. Under the broad approach, the psychotherapist-patient privilege is waived
           whenever the patient places his mental condition at issue. *Sanchez v. U.S. Airways
23           Inc.*, 202 F.R.D. 131 (E.D. Pa. 2001) (Plaintiffs alleging Title VII violation waived
           the psychotherapist-patient privilege by alleging emotional distress); *Doe v. City of
24           Chula Vista*, 196 F.R.D. 562, 567 (S.D. Cal. 1999) (Plaintiff in employment
           discrimination case who seeks to recover for emotional distress damages is relying
25           on her emotional condition as an element of her claim and waives the privilege);
           *Sarko v. Penn-Del Directory Co.*, 170 F.R.D. 127, 130 (E.D. Pa. 1997) (Plaintiff in
26           American with Disabilities Act case who alleged defendant did not accommodate
           her depression waived psychotherapist-patient privilege); *EEOC v. Danka
27           Industries, Inc.*, 990 F. Supp. 1138 (E.D. Mo. 1997) (Plaintiff waived
           psychotherapist patient privilege by alleging emotional distress damages in sexual
28           harassment case brought pursuant to Title VII).

1

2

3

4

5

6

7

8

> Under the narrow approach, the psychotherapist-patient privilege is waived only if the patient places the contents of the communication itself at issue, which excludes raising a claim of emotional distress. *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 229 (D. Mass. 1997). Utilizing this approach, the psychotherapist privilege is not waived in cases such as this one, in which a plaintiff alleges generic damages for emotional distress. *Fitzgerald v. Cassil*, 216 F.R.D. 632 (N.D. Cal. 2003); *Fritsch v. City of Chula Vista*, 187 F.R.D. 614, 621 (S.D. Cal. 1999) (holding that party did not waive the privilege by putting emotional state at issue.); *Ruhlman v. Ulster County Department of Social Services*, 194 F.R.D. 445, 448-449 (N.D. N.Y. 2000) ("A party does not put his or her emotional condition at issue by merely seeking incidental, 'garden variety' emotional distress damages, without more."); *Santelli v. Electro-Motive*, 188 F.R.D. 306, 308-309 (N.D. Ill. 1999) (holding that privilege was not waived so long as plaintiff limits her testimony on emotional distress damages to common humiliation and embarrassment).

9

*Id*. 258 F.R.D. at 399.

10

11

12

13

14

15

Here, the Court does not have information to determine whether Plaintiff has properly invoked the psychotherapist-patient privilege or whether the broad or narrow approach should be considered relating to the circumstances of this case.  Again, the parties are encouraged to meet and confer in an attempt to resolve this dispute.  If a resolution cannot be reached, the parties should provide further briefing to the Court on this issue, discussing whether the psychotherapist-patient privilege is applicable, which approach should be considered, and why.

16

### III.   CONCLUSION AND ORDER

17

Accordingly, IT IS HEREBY ORDERED that:

18

19

20

1.     The parties SHALL engage in continued meet and confer efforts in an attempt to resolve their discovery disputes, and should consider the guidelines provided by the Court in this order regarding the disputed issues;

21

22

23

2.     The parties SHALL each submit to the Court and exchange with each other brief summaries (no longer than five (5) pages) discussing the outcome of the additional meet and confer efforts and setting forth any remaining discovery disputes; and

24

//

25

//

26

//

27

//

28

//

7

1       3.      The summaries SHALL be submitted to the Court by no later than **Friday, June**

2       **21, at 12:00 p.m. (noon)** via email at skoorders@caed.uscourts.gov.

3

4

IT IS SO ORDERED.

5

6       Dated:     **June 17, 2013**                                    **/s/ Sheila K. Oberto**
                                                            UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8