1

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                   **FOR THE EASTERN DISTRICT OF CALIFORNIA**

8

| | |
|---|---|
| **DIANE THOMAS-YOUNG,** | **1:12-cv-1410  AWI SKO** |
| **Plaintiff,** | |
| **vs.** | **MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION** |
| **SUTTER CENTRAL VALLEY HOSPITALS, dba MEMORIAL MEDICAL CENTER, a California Corporation; and DOES 1-100, inclusive,** | **Doc. # 43** |
| **Defendants.** | |

17

18        This is an action for damages by plaintiff Diane Thomas-Young ("Plaintiff") against

19   defendant Sutter Central Valley Hospital dba Memorial Medical Center ("Defendant") arising

20   from an employment agreement between the parties that was allegedly breached by Defendant.

21   This action, which was originally filed in Stanislaus County Superior Court was removed to this

22   court under federal subject matter jurisdiction over Plaintiff's claims pursuant to the federal

23   Family Medical Leave Act, 29 U.S.C. § 2611(4)(A).  Federal subject matter jurisdiction exists

24   pursuant to 28 U.S.C. § 1331.  Venue is proper in this court.

25              **GENERAL FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

26        At the time of events giving rise to this action, Plaintiff was an individual with an

27   extensive work history in philanthropic fundraising.  She had worked for the American Red

28   Cross for about 31 years and was within about five to ten years of the time she planned to retire.

In 2008, Defendant recruited Plaintiff to work for Defendant through the efforts of non-parties Mr. Steve DeGraaf, Defendant's Executive Director and Plaintiff's immediate supervisor at the time of her hire, and Mr. David Benn, Defendant's CEO at the time of Plaintiff's hire.  Plaintiff's complaint alleges that negotiations over the terms of Plaintiff's proposed employment continued for a period of about eight months.  Among the conditions of employment that were discussed by the parties, four figure prominently in this action.  Plaintiff's complaint alleges it was the intent of the parties to the negotiation to establish that: (1) the position into which Plaintiff would be hired would be categorized as a management position; (2) Plaintiff would maintain a work schedule in which she would work four days per week, having each Friday off in order to attend to the needs of her institutionalized son; (3) she would receive 34 days of paid time off ("PTO") per year *plus* an additional 11 paid holidays per year; and (4) she would receive yearly "merit" pay increases upon satisfactory performance as determined by yearly reviews.

Plaintiff's complaint alleges that each of the four employment elements listed above were breached over the course of Plaintiff's employment, which began on or about early September 8, 2008, and ceased on July 22, 2010.  Plaintiff discovered that her job was not classified as management and that her job description was substantially at variance from what she had been led to believe prior to beginning of her employment in 2008.  Likewise, she learned that the classification of her job as non-managerial meant that she had fewer days of PTO and that paid holidays were counted as part of the total of 34 days of PTO, rather than in addition to the PTO days.  Issues regarding Defendant's failure to grant Plaintiff yearly merit increases in pay arose sometime after she completed her first full year of employment and received no merit increase. Plaintiff maintained a four-day-a-week work schedule until mid-2009 at which de Graff was replaced by a new Executive Director who decided that Plaintiff's position required five-day-a-week staffing.

Plaintiff's complaint treats the breach of the employment agreement as a single transgression consisting of several elements.  As will be discussed *infra*, the result of Plaintiff's conceptualization of the "single breach" is that the dates at which certain of the elements of the

breach occurred are not determinative of accrual dates of her claims related to contractual or tort claims. Whether Plaintiff terminated her employment or was constructively terminated is also in dispute. It appears from Plaintiff's complaint that the refusal by de Graff's replacement, Ms. Svihus, to allow Plaintiff to continue her 4-day-a-week schedule was the issue leading directly to the termination of Plaintiff's employment with Defendant on July 22, 2010.

Plaintiff's claims for violation of the FMLA and the California Family Rights Act ("CFRA"), Cal. Gov. Code § 12945.2 are related primarily to the interference with Plaintiff's use of paid Fridays off to care for her son. Plaintiff's complaint alleges her son is diagnosed with paranoid schizophrenia and was institutionalized at all times relevant to this action. During the time relevant to this action Plaintiff also alleged she required unpaid leave covered under the FMLA to provide care for her mother and for time required for her own recovery from cardiac surgery.

Defendant's motion for summary judgment was filed on December 18, 2013. Plaintiff's opposition was filed on January 8, 2014, and Defendant's reply was filed on January 21, 2014. The matter was taken under submission as of January 27, 2014.

### JOINT STATEMENT OF UNDISPUTED MATERIAL FACTS

The following facts are stipulated by the parties and submitted jointly as undisputed material facts.

A powerpoint summary of benefits Jill Ayres sent to Plaintiff [prior to her date of hire] states "PTO hours include holiday pay, vacation and time off." Doc. # 45 at ¶ 1. On June 24, 2008, Plaintiff requested that Victoria Little edit Plaintiff's employment offer letter to include language memorializing Plaintiff's understanding that the parties had agreed to a four-day workweek schedule (flex schedule) in her case. Plaintiff responded to Victoria Little's June 25, 2008 email by writing "Thank you for the clarification on the 40-hour work week." Doc. # 45 at ¶ 3. Plaintiff testified that she signed her job offer letter on September 8, 2008, but dated her signature as July 7, 2008. Plaintiff started working at [Defendant] Hospital Foundation on September 8, 2008.

Plaintiff admits that she never had a written agreement with Defendant guaranteeing her right to work a four-day workweek schedule.  Defendant provided Plaintiff with notice of her rights to Family Medical Leave Act (FMLA) and California Family Rights Act (CFRA) leave when Plaintiff requested leave to care for her mother commencing in March 2010.  Defendant approved Plaintiff's FMLA and CFRA leave from March 16, 2010, through May 31, 2010, so Plaintiff could care for her mother.

### PARTIES' PROFFERS OF DISPUTED AND UNDISPUTED MATERIAL FACTS

Defendants have proffered a set of 27 undisputed material facts, nearly all of which are disputed to some extent.  In sum, Defendant's proffer of facts is intended to support three propositions.  The first is that Plaintff was informed as of the time she received the formal job offer that her work position was full time exempt and was non-managerial.  Second, the proffered facts also support the Defendant's allegation that Plaintiff was informed as of the beginning of her employment that her actual work schedule; that is, whether a four-day work week was permitted, was at the discretion of her supervisor.  Third, Defendant's proffer of material facts supports Defendant's contention that, to the extent Plaintiff's claims under the FMLA or CFRA are based on Defendant's refusal to continue to allow Plaintiff to work a four-day workweek for the purpose of caring for her incarcerated son, Plaintiff has failed to provide evidence to show that her son was a qualified family member under either act.

Plaintiff submitted a set of disputed material facts in opposition to Defendant's motion for summary judgment.  Plaintiff's proffer of disputed material facts is intended first to support her contention that she did not consider Defendants job offer, or the information transmitted to Plaintiff by Jill Ayres or Victoria Little, to be determinative of the conditions of her employment insofar as they deviated from the understanding she had reached with DeGraff and Benn and had communicated through emails and verbal communications with Defendant.  Plaintiff provides evidence to support her allegation that she raised issues concerning paid days off, the alleged discrepancies in her job description, her four-day work week and non-payment of merit increases

more or less continuously during the term of her employment and considered these "open issues" up until the discontinuation of her employment.

**LEGAL STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Although the party moving for summary judgment always has the initial responsibility of informing the court of the basis for its motion, the nature of the responsibility varies "depending on whether the legal issues are ones on which the movant or the non-movant would bear the burden of proof at trial."  Cecala v. Newman, 532 F.Supp.2d 1118, 1132-1133 (D. Ariz. 2007).  A party that does not have the ultimate burden of persuasion at trial – usually but not always the defendant – "has both the initial burden of production and the ultimate burden of persuasion on the motion for summary judgment."  Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).  "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v.

Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594

F.2d 202, 208 (9th Cir. 1979).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987)

### DISCUSSION

Plaintiff's complaint alleges a total of ten claims for relief.  The first five of these allege claims under California common law for Defendant's failure to adhere to the agreement that Plaintiff alleges existed between Plaintiff and defendant prior to the time Plaintiff began working for Defendant and that supersedes or modifies the terms set forth in the job offer that Plaintiff signed.  The first two of these claims are for breach of contract and breach of covenant of good faith and fair dealing.  The next three of the common law claims are fraud-related; promissory fraud, fraud and negligent misrepresentation.  Plaintiff's next four claims allege statutory violations of the FMLA and the CFRA and the tenth claim alleges a claim for wrongful termination in violation of public policy.  At the outset, the court feels it important to take note of the fact that Plaintiff's complaint alleges somewhere between three and six theories of injury with regard to her fraud-related and breach-related claims.  As noted above, it is Plaintiff's contention that the sum of these injuries constitutes a single, indivisible claim for relief for each of the common law claims.  In the discussion that follows, the court will discuss the legal basis for her contention that it is permissible to allege a single claim for relief based on multiple alleged injuries and that the courts and opposing party may not assail the indivisibility of the claim.  The court finds Plaintiff's contention regarding the indivisibility of her claims to be without support.

The court's determination that Defendant cannot be prevented from challenging individual allegations of injury individually shines a harsh light on Plaintiff's claims for relief.  Plaintiff's common law claims for relief are somewhat ambiguous and inexact.  Because the matter is before the court as a motion for summary judgment and not as a motion to dismiss, a few consequences are worth noting.  First, Plaintiff's fraud-related claims are, on inspection, in

violation of Rule 9 of the Federal Rules of Civil Procedure inasmuch as Plaintiff has failed to plead instances of fraud with sufficient particularity.  However, by bypassing any motion to dismiss, Defendant has waived any challenge to Plaintiff's fraud claims based on any misunderstanding of what has or has not been alleged.  By the same token, to the extent Plaintiff may disagree with either Defendant's or the court's interpretation of what injuries have or have not been alleged, Plaintiff will be denied the opportunity to correct any confusion that may have arisen by amending her complaint.  The court mentions this in passing because the decision by one or both parties to forego precision in pleading or to forego the opportunity to challenge ambiguity in a motion to dismiss in favor of summary judgment may result in unintended consequences.

**I.  Plaintiff's Common Law Claims for Breach and Fraud**

The first five of Plaintiff's claims for relief allege, in order, common law claims for breach of contract, breach of covenant of good faith and fair dealing, promissory fraud, fraud, and negligent misrepresentation.  Defendant characterizes Plaintiff's first five claims to each allege a quintet of breaches that are suggested, if not stated explicitly in Plaintiff's complaint. These alleged breaches include (1) breach of promise to classify her job as managerial, (2) failure to provide the number of PTO days as agreed, (3) failure to grant yearly merit-based pay increases,  (4) classification of her employment as "at will," as opposed to being for a term of "five to ten years," and (5) failure to permit Plaintiff to maintain a four-day-a-week work schedule. [1]  It is these five breaches that constitute the conduct for which recovery is sought. Plaintiff contends that the set of terms and conditions she negotiated with DeGraff were a

---

[1]    Defendant supplies an enumeration to the legal theories asserted by Plaintiff that is the same as the ones listed except that number 3 on the list is replaced by a theory Defendant labels "job description changed when Plaintiff started working."  See Doc. # 44 at 18:18 (Defendant's list).  It appears from Defendant's pleadings that Defendant is of the opinion that Plaintiff's has abandoned her claim on a theory of entitlement to merit increases.  Plaintiff's opposition suggests that she has not.  The fact that the issue is not clear underscores the usefulness of motions as a means of resolving ambiguity and inartful pleading where it occurs.  To the extent that it was Plaintiff's intent to base a theory of recovery on the alleged change in her job description after she began work, the court interprets such claim to include only those changes in working conditions as were apparent to Plaintiff as of or shortly following the time she began work.  The court feels any other interpretation would result in impermissible ambiguity.

"package deal" and that the five acts alleged to have breached the agreement did so as a single breach or cause of action which occurred at the time Plaintiff filed her action.  As Defendant notes, Plaintiff's characterization presents a number of logical and legal difficulties.

### A.  Plaintiff's Theories of Breach Are Not A Single Cause of Action

As defendant points out, Rule 56 of the Federal Rules of Civil Procedure permits a party to move for summary judgment by identifying "each claim or defense – *or the part of each claim or defense* – on which summary judgment is sought.  Id. (italics added).  Defendant's motion for summary judgment seeks judgment with regard to the first three of the listed "breaches" primarily on the ground those claims are barred by the applicable statutes of limitations. Plaintiff contends that contends that Defendant cannot "piecemeal" the conduct that Plaintiff considers a single breach and offers two cases in support of that contention;  Securities & Exchange Comm. v. Thrasher, 152 F.Supp.2d 291 (S.D. N.Y. 2001) ("Thrasher") and Lies v. Farrell Lines, Inc., 641 F.2d 765 (9 Cir. 1981).  Neither case supports Plaintiff's contention.  In Thrasher, the Securities and Exchange Commission ("SEC") attempted to obtain judgment on certain preliminary non-dispositive *facts* that were elements of the civil claims alleged by SEC, but were not the claims themselves.  The court in Thrasher concluded that summary judgment was not appropriate for the purpose of achieving "disposition of elements of a claim rather than judgment on a claim."  152 F.Supp.2d at 295.

Plaintiff's contention that Defendants failure to classify her job as managerial, make changes in her job description or classify holidays as part of the total of PTO days are but "elements" of a single, later-completed, breach is an attempt to cloud the difference between the legal theory of a claim and an element of a claim.  The difference between the two that is useful for purposes of the present discussion is that a "claim" is a basis for an award of damages but an element of a claim is not.  Although Plaintiffs fraud-related and breach-related claims are set forth as single claims, each of the alleged acts enumerated above would require, if proven, a separate calculation of damages.  Because separate damages would be awarded, for example, for failure to classify Plaintiff's job as managerial and for considering her employment to be at will

rather than for a term of years, the two are separate claims, not separate elements of a single claim.

The second case cited by Plaintiff, <u>Lies</u>, is similarly unhelpful to Plaintiff.  <u>Lies</u> concerned a suit under the Jones Act by a seaman against the owner of a ship on which he had suffered a series of injuries.  The plaintiff in <u>Lies</u> discontinued work aboard the defendant's ship following the institution of his lawsuit and went to work on another, separately owned ship where he sustained another injury during the pendency of his suit against the defendant.  The seaman plaintiff attempted to claim damages for the accident that occurred on the second ship in the suit against the original defendant based on the theory that his injuries on the first ship had caused the injury he suffered on the second.  <u>See</u> <u>Lies</u>, 641 F.2d at 767-768 (explaining plaintiff's theory of defendant's liability for injury occurring on a ship the defendant did not own).  In <u>Lies</u>, the appellate court reversed the district court's grant of summary judgment as to the plaintiff's attempt to collect damages for injuries occurring on the second ship based on court's determination that the district court had used the wrong standard of causation.  The appellate court held that the plaintiff was entitled to move to trial on his claim for damages arising from the subsequent accident because, under the Jones Act, only the smallest of connections was required between the first injuries and the second to allow the plaintiff to place the issue before a jury.  <u>Id.</u> at 771.

The factual background in <u>Lies</u> bears little or no resemblance to that of the case at bar.  Plaintiff's theories of breach enumerated above are not interdependent; that is, none of those theories have a causal relationship to any others.  That causal relationship was central to the decision in <u>Lies</u> and the absence of causal relationships among Plaintiff's various theories of breach renders the decision in <u>Lies</u> unsupportive of the contention Plaintiff is attempting to make.  The court finds that the plain language of Rule 56 is determinative.  Defendant may move for judgment as to any or all of Plaintiff's individual legal theories of liability.

//

//

### B.  Claim Accrual and Limitations Periods

#### 1.  Fraud-Based Claims

The general rule is that a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.   Kimes v. Stone, 84 F.3d 1121, 1128 (9th Cir.1996).  Defendant contends that Plaintiff knew, as of the date commencement of her job or very shortly thereafter, that (1) her job was not classified as managerial, and (2) the total numbers of paid days off per year was to be inclusive of paid holidays.  Plaintiff's complaint alleges that she learned on or about September 9, 2008, that her allocation of paid days off *included* holidays.  Similarly, it appears uncontroverted that Plaintiff knew as of the time she commenced work that her job was not classified as managerial.  Thus, facts giving notice of Plaintiffs injury as to those two theories of recovery were known to Plaintiff as of September 9, 2008 and the claims accrued as of that date at the latest.

California Code of Civil Procedure § 338(d) imposes a three-year limitations period for claims sounding in fraud.  To allege a claim for fraud arising from facts that were apparent more than three years before the action was brought, it is well settled that a plaintiff must provide "distinct averments as to the time when the fraud was discovered and what the discovery is, so that the court may clearly see whether by ordinary diligence the discovery might not have been sooner made." Faulkner v. Burton, 126 Cal.App.2d 210, 213 (3rd Dist. 1954).  Plaintiff provides no facts to indicate that she could not have known of the facts constituting the alleged fraud with regard to the classification of her position and the number of PTO days allocated as of September 9, 2008.  As discussed above, Plaintiff's claims accrued as of September 9, 2008, when she knew that her job was not classified as managerial and that the 28 paid leave days she was entitled to included holidays.  This action was filed on June 18, 2012; three years and eight months later, or eight months after the limitations period on any fraud claims had run.  Plaintiff does not dispute that there is a three-year limitations period for claims sounding in fraud; rather she contends that she considered the issues raised eventually in the claims as being "open" in the sense of being open to discussion and resolution and as therefore not having accrued.

California's limitations statute and the case authority interpreting it leave no room for the proposition that a claim for fraud accrues when a would-be plaintiff subjectively feels that it is time to file a suit. To the extent Plaintiff's third, fourth and fifth claims for relief seek damages arising from any promise that was known by Plaintiff to be false as of the beginning of September 2008, such claim is barred by the three-year statute of limitations.

### 2. Contract-Related Claims

Likewise, Defendant points out that claims arising from an alleged breach of an oral contract must be brought within two years of knowledge of facts constituting the breach pursuant to California Code of Civil Procedure § 339. Again, Plaintiff acknowledges the limitations period but contends that the oral contract governing the conditions of her employment was not breached until she subjectively determined that the promises had been breached; that is, at the time she filed her complaint for breach. Plaintiff relies primarily on Romano v. Rockwell Int'l, Inc., 14 Cal.4th 479 (1996) and Mullins v. Rockwell Int'l Inc., 15 Cal.4th (1997), for the proposition that a plaintiff may seek informal resolution of an employer's deviation from what the plaintiff feels was the employment agreement until such time as she determines the employment agreement has been terminated for breach.

Plaintiff's reliance of Romano and Mullins is misplaced. In Romano, an employer stated an intention to terminate the employment of an employee against his will and in violation of an allegedly implied contract and in alleged violation of various California statutes. 14 Cal.4th at 485. The defendant in that case asserted a limitations defense based on accrual of the plaintiff's claims as of the time the defendant announced the intention to terminate the plaintiff's employment on a certain future date. Id. at 486. The California Supreme Court held:

> In the event the promisor *repudiates* the contract before the time for his or her performance has arrived, the plaintiff has an election of remedies – he or she may "treat the repudiation as an anticipatory breach and immediately seek damages for breach of contract, thereby terminating the contractual relation between the parties, or he [or she] can treat the repudiation as an empty threat, wait until the time for performance arrives and exercise his [or her] remedies for actual breach if a breach does in fact occur at such time." [Citation omitted]. Most significantly with reference to the case presently before us, in the event the plaintiff disregards the repudiation the statute of limitations does not begin to run until the time

set for performance .

Id. at 489 (italics added).  In Mullins, the California Supreme Court applied its holding in Romano to the context of constructive discharge.  See Mullins, 15 Cal.4th at 738 (holding reasoning in Romano applies in context of constructive discharge).  Essentially, the Mullins Court recognized the general principle that, where a contract imposes a *continuing obligation* on a defendant, the plaintiff may elect to continue to perform for a reasonable time in order to allow the normal process of conciliation to run its course.  Id. at 742.

Plaintiff's argument regarding the accrual of her claims suggests that the breaches that she was made aware of at the outset of her employment – the fact her position was not managerial, that her holidays would be counted against the total of paid leave days and that her job description was not what she had bargained for – constitute continuing obligations on Defendant.  The court disagrees.  A job description, including a description of paid benefits, including paid time off is normally provided to any employee at the time of hire.  The parties do not dispute that such information was transmitted to Plaintiff at the time of hire.  The obligation to provide this information does not recur.  Neither Mullins nor Romano apply because the classification of Plaintiff's job as non-managerial, the deviations in her job description and the enumeration of her PTO days do not constitute a repudiation of a intent to perform a future obligation and do not constitute a continuing obligation that was repudiated or breached.

The court finds that Plaintiff's claims for damages based on any alleged deviation in the bargained-for job description, number of paid days off or failure to provide a management level position accrued as of September 9, 2008, at the latest.  As such, these claims are time-barred under both fraud-based and contract-based theories of recovery.

### C.  Claims for Breach or Fraud Pertaining to Claim of Employment for a Term

Plaintiff alleges both respect to the breach and fraud-related claims that she accepted employment by Defendant for a definite term of "five to ten years."  Notwithstanding any of Defendant's other defenses to this claim, the claim can only be the basis of any recovery if Plaintiff did not voluntarily resign her position but was fired.  In this regard, Plaintiff contends that, although she formally resigned, she actually suffered constructive discharge.  In general,

constructive discharge for purposes of state law claims is determined by the same standards as use by the district courts of the same circuit.  Turner v. Anheuser-Bush, 7 Cal. 4th 1238, 1246 (1994).  The Ninth Circuit has held that "[a] constructive discharge occurs when, looking at the totality of circumstances, 'a reasonable person in [the employee's] position would have felt that he was forced to quit because of intolerable and discriminatory working conditions.' [Citations.]"  Watson v. Nationwide Ins. Co., 823 F.2d 360, 361 (1987).  The test for intolerable working conditions is an objective one.  Id.  Generally, the allegation of intolerable working conditions leading to constructive discharge requires a showing of differential treatment occurring over a period of months to years.  Id.

There is no question that the issue that prompted Plaintiff to discontinue her employment with Defendant was Defendant's decision that Plaintiff's job required Plaintiff's presence five days a week.  While the issue was obviously of great importance to Plaintiff, it is not the sort of *objectively* discriminatory condition that would support a claim of constructive discharge.  As noted above, constructive discharge is applicable only in situations where *discriminatory* conditions are inflicted on a worker that are sufficiently severe to cause a person of normal sensibility to quit.  There is no evidence that the job requirement imposed on Plaintiff was discriminatory.  Indeed, the 5-day work week is more the norm than the exception.  The fact that Plaintiff subjectively felt she could not comply with the change in her work schedule constitutes a mismatch between Defendant's assessment of its needs and Plaintiff's assessment of her own, but it does not constitute the sort of malign and objectively abusive treatment that is the foundation of a valid claim of constructive discharge.  The court concludes that Plaintiff resigned her position voluntarily; she was not constructively discharged.

Because the court finds that Plaintiff resigned voluntarily, there is no claim that can arise with regard to employment for a definite or indefinite term of years.  Any claim of damages that arises out of Plaintiff's understanding that she was employed for a term of years is therefore without merit.  In addition, because the court finds Plaintiff resigned voluntarily, there can be no claim for discharge in violation of public policy

### D.  Breach or Fraud Arising from Denial of 4-Day-a-Week Work Schedule

Plaintiff's fraud-related claims are, in order, promissory fraud, fraud and negligent misrepresentation.  At the center of each of these claims is a false statement.  See McVicar v. Goodman Global, Inc., 2014 WL 794585 (C.D. Cal. 2014) at*13 (fraud, fraudulent concealment and negligent misrepresentation all species of deceit involving making of a false statement); Rossberg v. Bank of America, 219 Cal.App.4th 1481, 1498 (4th Dist. 2013) (promissory fraud a "subspecies of the action for fraud and deceit").  Because the court has determined that Plaintiff's theories of breach or broken promises can, and must, be separated for purposes of analysis, the court will consider Plaintiff's remaining two theories -- that she was denied a four-day work week and that she was denied merit increases – separately.  With regard to the promise of a four-day-a-week work schedule the court finds it difficult to locate any false promise by any party.

Plaintiff alleges that de Graff and Benn acknowledged Plaintiff's requirement for a four-day-a-week work schedule with "a wink and a nod."  In its proffer of undisputed material facts, Defendant alleges Plaintiff requested a clarification from Victoria Little on the subject of her understanding that she would be allowed a four-day-a-week work schedule and received a reply on June 25, 2008, in which it was explained that the scheduling of her 40 hour per week work commitment was at the discretion of her supervisor.  Defendant's UMF # 2, Doc. # 66 at ¶ 2. Plaintiff acknowledges receipt of the communication from Victoria Little and indicated she was aware of the portion of it that provided that the scheduling of her 40-hour workweek was at the discretion of her supervisor.  Plaintiff disputes Defendant's proffered fact to the extent that it is offered to show that she did not enter into an agreement with defendant allowing her to work a four-day work week.

There is no indication in Defendant's proffered undisputed material fact or in Plaintiff's opposition or in comments regarding the exchange of information that anyone said anything that they believed to be untrue at the time or that was recklessly false.  There are no facts to contradict Defendant's contention that de Graff and Benn were aware of their role in arranging

Plaintiff's work schedule and that they permitted Plaintiff to work a four-day-a-week schedule for almost two years.  Defendant, through Victoria Little, truthfully conveyed to Plaintiff the supervisor's role in setting work schedules.  Clearly, there were no facts known to either Benn or de Graff at the time of Plaintiff's hire to indicate that de Graff would be replaced by Jennifer Svihus, who would ultimately require a five-day work schedule for Plaintiff.

Plaintiff alleges no facts to indicate that Defendant made any representation to her that her four-day-a-week work schedule was anything other than an accommodation by a supervisor at an employee's request pursuant to the supervisor's discretion.  While Plaintiff represents that her four-day-a-week work schedule was a bargained-for contractual right, that representation is undercut by her acknowledgement of Victoria Little's communication to Plaintiff explaining Defendant's practice of placing work scheduling at the discretion of the employee's supervisor.  In short, Plaintiff cannot transmute an agreement between an employee and a supervisor to exercise discretion in favor of a four-day-a-week work schedule into a contractual right just by declaring that such was her subjective expectation.  While Jennifer Svihus' decision to require that Plaintiff work a five-day workweek may have been incompatible with Plaintiff's needs and inconsistent with her subjective understanding, there is nothing in the record to indicate that Svihus was prevented by contract or by promise from exercising her discretion to alter Plaintiff's work schedule to fit her perceived need for five-day-a-week staffing in Plaintiff's position.

The court finds that Defendant did not communicate any false information to Plaintiff regarding the scheduling of 40-hour work week.  To the extent Plaintiff seeks to construe a 40-hour, four-day-a-week workweek as a bargained-for right, she was informed otherwise before she commenced employment in 2008 and any claim that Plaintiff had secured a bargained-for right that was different than what Defendant informed her of is now time-barred.  Consequently, the court concludes that Defendant is entitled to summary judgment with regard to claims arising from the change in Plaintiff's work schedule from four days to five days a week under both contract and tort theories.

### E.  Claims for Fraud and Breach Arising From Failure to Grant Merit Increases

The court includes this topic because it is not clear on the status of the issue.  Defendant does not raise the issue in its memorandum of points and authorities.  Plaintiff makes several references to the allegedly unfulfilled promise of yearly merit increases but does not object to Defendant's enumeration of the theories of recovery which specifically omits any claim based on recovery for un-granted yearly merit increases.  Defendant's reply only makes a passing reference to the issue of in a footnote where Defendant notes: "Plaintiff conceded that the promise related to her salary turned out to be true."  Doc. # 64 at 10 n.5.  Because Defendant did not address the issue of yearly merit increases in the motion for summary judgment and because Plaintiff has not made it clear whether it is or was her intention to seek recovery on that basis, the court will decline to make any decision on the matter.  In the event Plaintiff is of the opinion that the issue of merit pay increases remains a theory of recovery, she may so notify the court and additional briefing will be requested.

### F.  Claim for Breach of Covenant of Good Faith and Fair Dealing

As Defendant observes, Plaintiff's second claim for relief for violation of the implied covenant of good faith and fair dealing is simply a restatement of all the theories of recovery stated elsewhere in the complaint.  Because the court had determined that Defendant is entitled to summary judgment on each of Plaintiff's theories of recovery, the court also finds that Defendant is entitled to summary judgment as to Plaintiff's second claim for relief.

## II.  Claims Under FMLA and/or CFRA

### A.  Interference with Leave and Discrimination Under FMLA

An employee is entitled to 12 workweeks per year of protected unpaid leave Pursuant to 29 U.S.C. §  2612(a)(1) "in order to care for the spouse, son, daughter, or parent of the employee if such spouse, son, daughter or parent has a serious health condition."  § 2612(a)(1)(C).  The crux of Plaintiff's claim for interference under FMLA is the allegation that "Defendants terminated [Plaintiff's] employment because she was not able to adhere to the change in her schedule due to the needs of her son.  This termination led to Plaintiff forfeiting leave that she was still entitled to."  Doc. # 1 at 44:15-17.  It is not disputed that Plaintiff requested and

received leave covered under FMLA for the purpose of care for her mother and for her own recuperation from heart surgery.  The obligation of employers to grant protected leave under section 2612(a)(1)(C) is triggered by a request for leave that an employer may require to be "supported by a certification issued by the health care provider of the employee or of the son [. . .] as appropriate." 29 U.S.C. § 2613(a).  There is no allegation that Plaintiff ever requested medical leave for the purpose of tending to her son's needs prior to her separation from Defendant or that she provided any certification from a treating physician regarding her son's condition.  Indeed, the facts alleged indicate that the Fridays Plaintiff used to tend to her son's needs were part of her scheduled normal days off up to the time her schedule was changed so that her son's needs were tended to without any need for leave.

As the court noted above, it cannot be held that Plaintiff's departure from Defendant's employ was anything other than a result of her voluntary resignation.  Because the demand that Plaintiff work a normal 5-day work week does not qualify for the sort of objectively intolerable discrimination necessary to support a claim of constructive discharge, it cannot be said that Defendant caused the loss of what otherwise could have been covered medical leave days.  Rather, it is clear that Plaintiff voluntarily surrendered whatever covered medical leave she may have been entitled to when she resigned.  The court concludes that the submitted facts of this case fail to raise any issue with regard to the provision or withholding of, or interference with, protected leave under the FMLA.

Plaintiff's ninth claim for relief alleges discrimination in violation of FMLA .  Plaintiff alleges "Defendants [sic] retaliated and discriminated against Plaintiff, in violation of the FMLA, for taking protected leave due to the medical needs of her son and based on Plaintiff's request for an accommodated week schedule to care for her disabled son.  Defendants [sic] unlawfully and willfully terminated Plaintiff after returning from intermittent leave and requesting protected leave." Doc. # 1 at 45:19-22.

Plaintiff's claim fails for the reasons previously discussed.  First, Plaintiff was not terminated, she voluntarily resigned so the discriminatory act of which Plaintiff complains did

not occur.  Second, Plaintiff admits that Defendants communicated to her a rationale for the decision to require the position Plaintiff occupied to work a five-day-a-week schedule and communicated to Plaintiff that she could maintain her position if she would agree to that schedule.  There are no facts alleged to suggest that Defendant's motive for requiring a five-day-a-week schedule was anything other than the one stated.  As discussed above, whether or not Defendant's decision that Plaintiff's position needed to be staffed five days a week would prove to be correct, the relevant fact is the discretion to make that determination was vested in Plaintiff's supervisor, Jennifer Svihus.  This fact was made clear to Plaintiff at the beginning of her employment and there is absolutely nothing in the facts of this case to suggest that the eventual scheduling decision made by Svihus was anything other than the business decision she declared it to be.

The court finds there are no facts supporting the claim that Plaintiff was subject to discrimination or retaliation under FMLA.

### B.  Interference with Leave and Discrimination in Violation of CFRA

The California Family Rights Act, California Government Code 1245.2, basically serves the function of integrating the benefits of the FMLA into California statutory law.  There are no discernable differences in rights or obligations between the two, except to the extent the CFRA specifies in greater detail the required elements of notice, both from the employee to the employer in the case of medical certification, and from the employer to the employee regarding the designation of protected leave days.  Plaintiff's complaint alleges that "defendants [sic] interfered with Plaintiff's leave when Defendants terminated her employment due to Plaintiff's need and request for an accommodated workweek."  Doc. # 1 at 43:18-19.  In addition, Plaintiff alleges, "Defendants [sic] further failed to provide Plaintiff with a written guarantee of employment following the expiration of her leave.  *See* Cal.Gov't Code § 12945.2.  By failing to provide this guarantee, Defendants further interfered with Plaintiff's right to take leave."  Doc. #1 at 43:20-22.

The court has examined the cited reference to the CFRA and cannot find any provision requiring a written guarantee of employment following expiration or exhaustion of leave covered under the act.  In her separate statement of disputed material facts, Plaintiff clarifies the matter somewhat by alleging that, during her employment, Plaintiff requested and received eleven weeks of FMLA leave beginning on March 16, 2010, and ending May 31, 2010.  See Doc. # 70 at ¶ 99.  Plaintiff then alleges, "Plaintiff requested to extend her leave beyond May 31, 2010. However Defendant did not provide Plaintiff with a designation letter for FMLA leave taken beyond 77 Days or 11 weeks.  Defendant provided no written notice to Plaintiff extending Plaintiff's FMLA leave beyond 77 Days."  Doc. # 70 at ¶ 100.  The apparent upshot of Plaintiff's extension of leave was that the leave was taken from Plaintiff's pool of PTO days, rather than being taken from the allowance of 12 weeks of FMLA leave.  Thus, Plaintiff contends, she had a remainder of seven un-exhausted days of FMLA leave remaining as of the date she was informed that she would be required to work a 5-day workweek.

Plaintiff, in her opposition, contends that the "failure to follow the notice requirements outlined in 29C.F.R. §825.300 'may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights.'  29 C.F.R. § 825.300(e).  The language of the cited regulation is permissive, so the court looks to the facts alleged to determine if there was any actual interference.  Plaintiff does not dispute that she received notification when she requested extension of her leave to care for her mother past May 31, 2010, that if she extended her leave under FMLA, the allotment of 12 weeks of FMLA leave would be exhausted as of June 7, 2010. See Doc. # 66 at ¶ 15 (noting Plaintiff's admission of receipt of the notice and her objection on grounds of hearsay and foundation).  There is also no disputed that Plaintiff "negotiated" the additional leave to care for her mother with Svihus, and agreed ultimately to take the additional leave from her pool of PTO.  To the extent that Plaintiff contends that that the failure of Defendant to formally designate her leave time after May 31, 2010, caused an actual interference in the exercise of her rights under CFRA or FMLA, no facts have been alleged to indicate how there was any actual interference.  Plaintiff was made aware of the available balance of FMLA

leave days available to her as of May 31, 2010, and participated in the decision to designate the additional days of leave as PTO.  The court must assume Plaintiff was well aware of the undisputed fact she had seven days of unused FMLA-eligible leave days as of her return from the leave that began on March 16, 2010.  To the extent Plaintiff contends that the mere failure to issue a separate formal notification of designation of FMLA leave days following her return constitutes a *per se* interference with rights under either FMLA or CFRA, the court finds the permissive language of the regulation cited does not support such a contention.

Finally, to the extent Plaintiff contends that she suffered interference with rights under CFRA because she was terminated while still entitled to seven days of protected leave, that claim is unsupported for the reasons discussed above.  Plaintiff voluntarily resigned, she was not terminated and there are no facts indicating she requested to take her remaining FMLA leave days for the care of her son prior to the time she resigned.  Plaintiff, in her opposition, contends her employer was aware of her son's condition and that no "magic words" were necessary to invoke her right to protected leave under FMLA or CFRA.  While Plaintiff's contention is true, strictly speaking, Plaintiff was required to actually request the FMLA leave and to provide such certification as her employer might have required consistent with FMLA and CRFA.  Again, there are no facts to suggest she made such a request before she resigned.

Plaintiff's claim for retaliation under CFRA fails for exactly the same reason as the claim for retaliation under FMLA; there was no discriminatory act that occurred following Plaintiff's use of FMLA leave.

THEREFORE, for the reasons discussed, the court hereby ORDERS that Defendant's motion for summary judgment is hereby GRANTED except to the extent either party may move to clarify that a claim was alleged and continues to be viable for failure to pay yearly merit increases.  Any clarification of this issue must be filed and served on or before fourteen (14) days from the date of filing of this memorandum opinion and order.  If no further clarification is filed within the time period allotted, Defendant shall move for entry of judgment.

1

2          Defendants motion for reconsideration of the Magistrate Judge's order of July 10, 2013,

3   regarding discovery of Plaintiff's medical records regarding emotional distress, Document

4   Number 29, is hereby DENIED as moot.  Similarly, Defendant's motion to strike "Plaintiff's

5   Evidence Proffered in Opposition to Defendant's Motion", Document Number 68, is DENIED

6   as moot.

7   IT IS SO ORDERED.

8   Dated:   March 19, 2014          _____

9                                        SENIOR  DISTRICT  JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28