IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANE THOMAS-YOUNG,<br><br>**Plaintiff,**<br><br>vs.<br><br>**SUTTER CENTRAL VALLEY HOSPITALS, dba MEMORIAL MEDICAL CENTER, a California Corporation; and DOES 1-100, inclusive,**<br><br>**Defendants.** | 1:12-cv-1410  AWI SKO<br><br>**MEMORANDUM OPINION AND ORDER ON DEFENDANT'S SUPPLEMENTAL MOTION FOR SUMMARY ADJUDICATION**<br><br>Doc. # 82 |

On March 19, 2014, the court filed a memorandum opinion and order (hereinafter, the "March 19 Order") granting the summary judgment motion of defendant Sutter Central Valley Hospitals, dba Memorial Medical Center ("Defendant") as to all claims of plaintiff Diane Thomas-Young *except* that the court declined to address Defendant's summary judgment motion as to Plaintiff's claims related to the issue of entitlement to merit pay increases. See Doc. # 79 at 17:1-12 (noting court's uncertainty as to whether Plaintiff had abandoned claims related to entitlement to merit pay increases). On April 1, 2014, Plaintiff filed a petition to decide the issue of merit increases as set forth in Plaintiff's complaint. The court issued a briefing order on April 4, 2014.

**DEFENDANT'S PROFFER OF UNDISPUTED MATERIAL FACTS**

Defendant re-alleges the three undisputed material facts from its original motion for summary judgment that pertain to the issue of merit increases. These proffered facts are:

1. Plaintiff testified [in her deposition] that she knew defendant did not guarantee her a yearly merit pay increase
2. Plaintiff testified that she did not consider a merit pay increase to be a term of her employment with [Defendant].
3. Plaintiff testified that she did not satisfy all of the required conditions to be eligible for a salary increase based on her performance in 2009.

Each of these proffered facts are disputed by Plaintiff.

## PLAINTIFF'S PROFFER OF DISPUTED MATERIAL FACTS

Plaintiff has similarly re-alleged the disputed material facts originally set forth in her opposition to Plaintiff summary judgment motion as follows:

1. In 2009, the merit increases ranged between 1.75% for "meeting expectations, 3.00% for "exceeds Expectations," and 4.25% for exceptional performance.
2. Merit increases are awarded based on scores received in the performance reviews.  If Plaintiff received a positive performance review, Plaintiff would be *entitled* to a merit increase between 2% and 4.25%  (italics in original).
3. In the fall of 2009, Plaintiff's supervisor, Mr. de Graff, completed a performance review for Plaintiff stating that she exceeded expectations, but Mr. Steve Conforti questioned it because according to him "nobody is that good."  Such review was later modified by Plaintiff's subsequent supervisor, Ms. Jennifer Svihus, and still stated that Plaintiff had exceeded expectations (score of 2.40) and would be entitled to a 3% merit increase.
4. Defendant's practice was to complete performance reviews within 60 days of the anniversary date, and a performance review that is six months late would be considered significantly late.  Defendant's managers and representatives received a report stating those reviews were overdue.
5. Defendant informed Plaintiff for the first time in July 2010 that she was not eligible for a merit increase but a "top of range salary adjustment" amounting to 1.75%.
6. Defendant's policy is to inform all employees regarding merit increases.

7. Plaintiff has contended that the merit increase was a contract term in her response to Defendant's Special Interrogatories.

## LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Although the party moving for summary judgment always has the initial responsibility of informing the court of the basis for its motion, the nature of the responsibility varies "depending on whether the legal issues are ones on which the movant or the non-movant would bear the burden of proof at trial." Cecala v. Newman, 532 F.Supp.2d 1118, 1132-1133 (D. Ariz. 2007). A party that does not have the ultimate burden of persuasion at trial – usually but not always the defendant – "has both the initial burden of production and the ultimate burden of persuasion on the motion for summary judgment." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v.

Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594

F.2d 202, 208 (9th Cir. 1979). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

**DISCUSSION**

Plaintiff's complaint alleges five claims for relief under California common law. The claims alleged are breach of contract, breach of covenant of good faith and fair dealing, fraud, promissory fraud and negligent misrepresentation. The court's March 19 Order granted summary judgment as to the four claims for relief based on Plaintiff's allegations that Defendant refused to permit Plaintiff to work a four-day work week, failed to classify her position as a management employee, failed to classify Plaintiff's employment as being for a term of years, and failed to grant the number of paid days off per year that had been bargained for. The court also granted summary judgment as to Plaintiff's federal claim under the Family Medical Leave Act and California's Family Rights Act. The court declined to grant summary judgment as to Plaintiff's state common law claims based on the alleged failure to grant annual merit pay increases because it found the parties' pleadings incomplete or confusing. This order addresses Defendant's supplemental motion for summary judgment as to each of Plaintiff's remaining claims based on failure to pay annual merit pay increases.

*A. Fraud and Negligent Misrepresentation Claims*

As the court observed in its March 19 Order, Plaintiff's three fraud-related claims – promissory fraud, fraud and negligent misrepresentation – are each founded on a false statement. See McVical v. Goodman Global, Inc., 2014 WL 794585 (C.D. Cal. 2014) at *13 (fraud and negligent misrepresentation are species of deceit involving making a false statement); Rossberg v. Bank of America, 219 Cal.App.4th 1481, 1498 (4th Dist. 2013) (promissory fraud is a "subspecies of fraud and deceit"). Defendant's proffer of undisputed material facts go to support, for the most part, Defendant's contention that Plaintiff did not justifiably rely on the representations made in her negotiations with de Graff and Benn. Plaintiff's proffer of disputed

material facts appears to be intended to support her contention that she was entitled, under the terms of what she understood to be the agreement, to merit increases in the range of 2 to 4.5%. Somewhat oddly, neither party alleges facts that go directly to the issue of whether there was a false statement. What Plaintiff does allege is the fact that Defendant ultimately determined that "was not eligible for a merit increase but [was eligible for] a 'top of range salary adjustment' amounting to 1.75% of her salary." Doc. # 85 at 3:24-25. Plaintiff also alleges that Defendant did not pay Plaintiff any salary adjustment during her employment. Id. at 3: 25-26.

At issue, when it comes to Plaintiff's fraud-related claims, is what de Graff or Benn said to Plaintiff with regard to merit pay prior to the start of Plaintiff's employment. Because neither party has alleged in their supplemented facts what de Graff or Benn said to Plaintiff concerning merit pay, the court will presume for sake of this discussion what de Graff told Plaintiff that she would be eligible for a merit pay increase upon completion of one year of service with a performance rating of "meets standards" or better. The court understands this to be in accord with Plaintiff's previously alleged facts. With that assumption in mind, the court can find no factual basis for the allegation that de Graff or any other employee of Defendant was knowingly false or that the statement at issue should reasonably have been known to be false when it was made.

Plaintiff includes in the submitted exhibits, a copy of Defendant's Employee Handbook that was in force at the time of Plaintiff's employment. In pertinent part, the Handbook provides:

> Employees with satisfactory or above performance appraisals are eligible for a merit increase within the designated salary grade. Employees that are at the top of their classification salary grade and have an overall rating of "meets standard" or above are eligible for a top of range bonus rather than a merit increase.

Doc. # 97-1 at 29. Thus, it was the policy of Defendant at the time of Plaintiff's hire that, upon completion of a year of service with a performance rating of satisfactory or above that Plaintiff would have been entitled to a merit increase unless she had been hired at the top of the salary range for her position. There is no allegation that de Graff or Benn knew that Plaintiff was to be

hired at the top of the salary range for her position and there is no allegation that any representation was made to Plaintiff that she would be entitled to merit increases even if she was being paid at the top of her salary range in contravention to Defendant's written policy.  In short, the undisputed facts show only that both Benn and de Graff appear to have given Plaintiff information that accurately reflected Defendant's policy with regard to merit pay increases insofar as both de Graff or Benn knew, or could reasonably have been expected to know, the final terms of Plaintiff's employment.

As the court has previously pointed out, Rule 9(b) of the Federal Rules of Civil Procedure requires that a claim alleging any species of fraud or negligent misrepresentation "state with particularity the circumstances constituting the fraud." The documents submitted by Plaintiff with regard to her opposition to Defendant's original motion for summary judgment include a portion of Plaintiff's deposition transcript.  In that transcript Plaintiff discusses what she understood at the time of her acceptance of Defendant's job offer to be the terms and conditions of her employment.  The terms and conditions that Plaintiff regarded as critical to her acceptance of the job offer were summarized in a document Plaintiff refers to as the "letter of intent." See Plaintiff's exhibit "I", Doc. # 62-9 at 50 (identifying the Letter of Intent as an attachment to email messages between Plaintiff and Victoria Little).  Plaintiff testified at her deposition that she signed the letter of intent following some "edits."  Significantly, Plaintiff testified in her deposition that she did not make any mention of merit increases in her letter of intent.  Plaintiff did testified that her entitlement to merit increases was not a promise made to her and noted in the letter of intent; rather she testified that merit increases were an "expectation." See Doc. # 62-9 at 61:15- 62:16 (discussing the absence of the issue of merit increases from the list of terms of employment listed in the Letter of Intent).

Plaintiff's pleadings and her own deposition fail to identify any person or any instance in which a promise was made, and upon which Plaintiff relied, that Plaintiff would be entitled to merit pay increases notwithstanding Defendant's stated policy (which was provided to Plaintiff at her orientation) that employees who are paid at the top of the salary range for their job do not receive merit increases. Because Plaintiff has failed to allege any such statement by any Defendant employee, summary judgment will be granted as to Plaintiff's fraud related claims arising from the failure of Defendant to provide yearly merit increases.

### B. Plaintiff's Breach of Contract Claim

Plaintiff's opposition to Defendant's motion for summary judgment presents two issues. The first issue is whether the communications between Plaintiff and Benn and de Graff substantially altered the terms of employment as regards merit increases as set forth in Defendant's Employee Handbook. The second issue is whether Defendant has adequately shown there is no issue of material fact as to whether the employment agreement that did exist between Plaintiff and Defendant was breached.

With regard to the first issue, the court has previously noted that the transcript of Plaintiff's deposition reveals that there was no conversation between Plaintiff and either de Graff or Benn that even addressed, much less altered, the terms of Defendant's policy regarding merit pay. Plaintiff stated in her deposition that her contention that she was entitled to a merit increase upon the completion of one year of service with a job evaluation rating of satisfactory or higher was an expectation that she subjectively but was not something that she memorialized in the Letter of Intent that Plaintiff signed. Even if the court were to give effect to Plaintiff's subjective understanding to the extent that understanding arose from conversations with Defendant's employees there is nothing in those conversations that is alleged to have addressed the eventuality that Plaintiff would have begun her employment at the highest level of pay authorized under Defendant's pay policy. While Plaintiff may have subjectively expected a merit increase, there is no basis upon which the court can find there was "a meeting of the minds" that would be sufficient to modify or negate Defendant's stated policy of disallowing

merit increases where an employee is being paid at the highest level authorized by Defendant's pay policy. The court concludes that the agreement that controlled the obligation of Defendant with regard to merit pay increases were the terms set forth in Defendant's Employee Handbook that were quoted above.

The second issue, as noted above, is whether Defendant has succeeded in showing that there is no issue of material fact as to whether the Defendant breached the terms and conditions of the governing agreement between Plaintiff and Defendant with regard to merit pay increases. Defendant's Employee Handbook provided that, upon completion of one year of service Plaintiff was entitled, upon a rating of satisfactory service or above, to a "top of range bonus." While the term "top of range bonus" is not explained in the Employee Handbook, it is explained in a memo from Svihus to Plaintiff dated July 15, 2010. In pertinent part, the memo explains that:

> At the time of an employee's annual evaluation if their base salary is at or above the maximum of their salary [Defendant] has a provision that allows for a Top of Range (TOR) bonus to be paid. Salary Grades and Ranges are not increased at the time of the employee's evaluation. [Plaintiff's] base rate is higher than the max of her salary range which precludes an increase to that base salary.
>
> A market base adjustment may be applicable once a year as determined during the wage analysis. This is completely independent of the merit increase. The first year of [Plaintiff's] employment began toward the end of the year and market analysis had already been completed. The initial salary range for the job was considered determined with that fact in mind. The second year was 2009. During the Wage Analysis of 2009 [Plaintiff's] job was considered just as the other jobs were last year. A Wage Analysis based adjustment was made in Dec. 2009. [Plaintiff's] range did move by 1.5% as did every other job in the hospital.
>
> In December of 2009 [Plaintiff's] base rate also increased from $56.971 to $57.826. The employee did get the same market that the rest of the hospital received at the end of 2009.

Doc. # 84-2 at 45.

Because Plaintiff did not specifically address merit pay increases during her talks with deGraff and Benn and, in particular, because she did not address any exception in her case to Defendant's usual policy of disqualifying employees who are being paid at the top of their salary range from receiving merit pay increases, Plaintiff's entitlement or lack of entitlement to merit

pay increases is determined by Defendant's usual and customary policy as outlined in the Employee Handbook.  Defendant has provided evidence to support a finding that Plaintiff was paid from the beginning of her employment at the top of the salary range for her position. Plaintiff does not dispute this except to point out that she had a subjective expectation that her salary would increase based on performance.  Defendant has provided evidence to show that Plaintiff was paid in accordance with Defendant's existing policies for employees who are being paid at the top of the salary range designated for their job title and received a subsequent top of range pay adjustment in due course.  Again, Plaintiff does not dispute this fact.

Because the court has found that the agreement that governing Plaintiff's entitlement to merit pay adjustments is the pay policy of Defendant that was generally applicable to Employees working at the top of their salary range, and because the court has found that Plaintiff has failed to show that there remains any issue of material fact as to whether that policy was breached.  The court therefore finds Defendant is entitled to summary judgment as to Plaintiff's claim for breach of contract on the issue of merit pay increases.

THEREFORE, for the reasons set forth above, it is hereby ORDERED that Defendant's supplemented motion for summary adjudication as to Plaintiff's fraud-related and contract-related claims is hereby GRANTED in its entirety.  There being no remaining claims in this action, the court hereby ORDERS that the Clerk of the Court ENTER JUDGMENT in favor of Defendant and CLOSE THE CASE.

IT IS SO ORDERED.

Dated:   June 17, 2014                                   _____
                                                         SENIOR DISTRICT JUDGE